UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ROWE PLASTIC SURGERY OF NJ LLC,

    Plaintiff,

-against-

LEADING EDGE ADMINISTRATORS,

    Defendant.

Index No.: 2:24-cv-09533-JKS-MAH

**FIRST AMENDED COMPLAINT**

---

Plaintiff, Rowe Plastic Surgery of NJ LLC ("Plaintiff"), by and through its attorneys, Gottlieb and Greenspan, LLC, by way of its First Amended Complaint against Leading Edge Administrators ("Defendant"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a medical provider with a principal place of business at 89 Valley Road, Montclair, New Jersey 07042-2212.

2. Upon information and belief, Defendant and/or its subsidiaries are engaged in providing and/or administering health care plans or policies in the state of New Jersey.

3. Jurisdiction is proper in this Court pursuant to 9 U.S. Code §9.

4. Venue is proper in the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred with the District.

### FACTUAL BACKGROUND

5. Plaintiff is a medical practice that specializes in plastic surgery.

6. On August 16, 2023, Lisa M. Schneider, MD, a surgeon employed by Plaintiff, performed surgical treatment on a patient identified as S.J. ("Patient") at Hudson Regional Hospital, a hospital located in Secaucus, New Jersey.

7. At the time of her treatment, Patient was the beneficiary of a health plan issued or administrated by Defendant.

8. As an out-of-network provider, Plaintiff does not have a network contract with Defendant that would determine or limit payment for Plaintiff's services to Defendant's beneficiaries.

9. However, since the services were rendered at an in-network facility, the payment process for Plaintiff's services is governed by the Federal No Surprises Act ("the Act").

10. Pursuant to the Act, an out-of-network provider reserves the right to dispute a health plan's reimbursement for qualifying out-of-network services and initiate a 30-day negotiation period.

11. Should the parties fail to reach a resolution during the negotiation period, the provider has the right to initiate arbitration under which the proper reimbursement amount is determined by a neutral arbitrator.

12. Plaintiff issued a Health Care Financing Administration ("HCFA") medical bill to Defendant, seeking payments from Defendant for the medical services rendered.

13. Plaintiff billed Defendant $150,000.00 for Patient's surgery, an invasive bilateral breast reduction procedure to alleviate chronic neck and back pain, among other things. (*See*, **Exhibit A**, attached hereto.)

14. Plaintiff billed Patient's surgery under Current Procedural Terminology ("CPT") Code 19318-50.

15.     In response to Plaintiff's bill for CPT code 19318-50, Defendant "allowed" payment of $293.92, all of which was applied towards Patient's deductible. (*See*, the Explanation of Benefits ("EOB"), attached hereto as **Exhibit B**.)

16.     Defendant also acknowledged the applicability of the Act, appending an explanation for its allowance which stated: "Member held harmless non-participating provider. If the provider disagrees with the qualified payment amount remitted, then the provider should contact Leading Edge Administrators at NSANegotiations@leadingedgeadmin.com." (*see*, *Id*.)

17.     Defendant's initial processing of the instant claim stated that the Patient's Responsibility totaled only $293.92.

18.     As invited by Defendant, Plaintiff disputed Defendant's qualified payment amount ("QPA") allowance for CPT code 19318-50 and initiated the negotiation period called for by the Act.

19.     Defendant did not respond to Plaintiff during the Act's negotiation period.

20.     Subsequently, Plaintiff filed for arbitration, as called for by the Act, under Dispute Number DISP-884612.

21.     On February 28, 2024, the arbitrator ruled in Plaintiff's favor, awarding Plaintiff a total of $112,500.00, amounting to an additional $112,206.08, after accounting for Defendant's initial allowance of $293.92. (*See*, **Exhibit C**, attached hereto.)

22.     Pursuant to the Act, if it is determined in arbitration that an additional amount remains due, the carrier has 30 days from the date of the arbitration award to issue the additional payment.

23.     In this case, the additional payment was due on March 29, 2024. However, Defendant failed to issue the additional payment amount awarded in arbitration.

24. As of the date of the initial Complaint and through the date of this First Amended Complaint, over 150 days had elapsed since Defendant's deadline to submit the award payment to Plaintiff.

25. Following the IDR entity's award to Plaintiff, Defendant contacted James Greenspan, Esq. ("Mr. Greenspan"), counsel for the Plaintiff. Denise Molina ("Ms. Molina"), who indicates her title as "Manager Shared Savings," stated that the amount of the award was "too much" for the group to be able to pay.

26. Mr. Greenspan responded that the award is binding and due to the Plaintiff. The parties discussed possible resolution of the matter, and Ms. Molina stated that she needed to speak more with the fund.

27. Subsequently, on April 11, 2024, Ms. Molina e-mailed Mr. Greenspan. Her e-mail stated as follows: "Sorry I missed your phone call, but I wanted to let you know that after speaking to the account manager she shared with us that this is NOT a covered benefit...As far as this case goes the member has full responsibility of these charges..." (*See*, **Exhibit D**, attached hereto.)

28. Ms. Molina included in her e-mail the portion of Patient's insurance plan showing that "cosmetic breast surgery" is not covered. *Id*.

29. About a month after the conversation and subsequent email, and well after the award was granted to Plaintiff, Defendant reprocessed the claim, generating a revised EOB, which indicated that the claim was a "non-covered benefit." (*See*, **Exhibit E**, attached hereto.) Defendant's post-award processing of the claim "allowed" zero dollars and denied the claim in full.

30. **Defendant's post-award processing of the claim stated that the Patient's Responsibility now totaled $150,000.00**.

31. In other words, after Patient underwent breast reduction surgery to treat chronic back and neck pain, which Defendant initially covered and indicated was subject to the Act, after then losing the arbitration over the payment *amount* for the surgery, Defendant then attempted to retroactively reprocess the claim as a "cosmetic" procedure, which was deemed not covered under the plan. Pursuant to this retroactive reprocessing, the Defendant amended the Patient's responsibility from an initial amount of $293.92 to a staggering $150,000.00.

32. Plaintiff's surgery was not cosmetic, but rather was a medically necessary procedure to treat bilateral macromastia, as initially recognized by Defendant. (*See*, **Exhibit F**, attached hereto.)

33. Defendant only made this claim, *after the arbitration award was decided against them*, and after informing Mr. Greenspan that the amount was "too much."

34. Mr. Greenspan responded to Ms. Molina, advising that Defendant was improperly attempting to retroactively deny the procedure to skirt its obligation to pay a binding arbitration award, in violation of the Act.

35. Defendant, after discussions, did not change its position, and continues to refuse to pay the binding award.

## COUNT ONE

**PLAINTIFF SEEKS RELIEF IN ACCORDANCE WITH 9 U.S. CODE § 9**

36. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 35 of the First Amended Complaint as though fully set forth herein.

37. Under 9 U.S. CODE § 9, if the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall

specify the court, then at any time within one year after the award is made, any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order.

38. In this case, while the parties do not have an agreement that a judgment of the court shall be entered upon the arbitration award at issue, the arbitration award was issued pursuant to the Federal No Surprises Act.

39. Indeed, this District has held that Federal courts have authority to confirm arbitration awards issued pursuant to the NSA under 9 U.S.C. § 9. *See, e.g.*, *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. CV226614KMJBC, 2023 WL 5815821 (D.N.J. Sept. 8, 2023) (granting Horizon Blue Cross & Blue Shield's cross-motion to confirm an NSA entity award under 9 U.S.C. § 9 because the language of the NSA indicates the NSA award is "final and binding" and, by invoking Section 10(a) of the Federal Arbitration Act, the NSA "gives the court the authority to confirm the award").

40. It is against equity and good conscience to deprive Plaintiff of a remedy to enforce an arbitration award issued in accordance with federal law.

41. Accordingly, Plaintiff brings this action for an Order confirming the applicable arbitration award issued on February 28, 2024.

## COUNT TWO

**VIOLATION OF THE FEDERAL NO SURPRISES ACT FOR FAILURE TO PAY THE AWARD**

42. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 of the First Amended Complaint as if fully set forth herein.

43. Under the federal No Surprises Act, a party is permitted to initiate the federal arbitration process called for by the Act if the parties are unable to agree on a payment rate during the Act's negotiation period.

44. In the instant case, the parties were unable to agree on the out-of-network rate for the services provided, and the parties therefore proceeded to arbitration as called for by the No Surprises Act under Arbitration Dispute DISP-884612.

45. On February 28, 2024, Federal Hearings and Appeals Services, Inc. issued an arbitration award in Plaintiff's favor, awarding Plaintiff a total of $112,500.00 for the medical services rendered.

46. According to the No Surprises Act, Defendant had until March 29, 2024 to remit the additional arbitration payment to Plaintiff.

47. As of the date of the filing of this First Amended Complaint, Defendant has failed to remit the additional arbitration payment to Plaintiff, and currently owes Plaintiff $112,206.08 for this award.

48. As such, Defendant has failed to comply with the requirements of the No Surprises Act.

**COUNT THREE**

**VIOLATION OF THE FEDERAL NO SURPRISES ACT FOR REPROCESSING THE CLAIM FOR THE PURPOSE OF NEGATING THE AWARD**

49. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 of the First Amended Complaint as if fully set forth herein.

50. On February 28, 2024, Federal Hearings and Appeals Services, Inc. issued an arbitration award in Plaintiff's favor, awarding Plaintiff a total of $112,500.00 for the medical services rendered.

51. Rather than pay the binding award as obligated under the NSA, Defendant reprocessed the claim from "medically necessary" to "cosmetic" for the sole purpose of escaping its obligation under the NSA.

52. Defendant's behavior clearly indicates that the purpose of reprocessing its claim was its intention to not pay the award, and has made a complete mockery of a federal law.

53. As such, Defendant has failed to comply with the requirements of the No Surprises Act.

## COUNT FOUR

### FRAUDULENT MISREPRESENTATION

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 of the First Amended Complaint as if fully set forth herein.

55. Defendant, after a quasi-judicial entity made a determination that it owed an awarded amount to Plaintiff, misrepresented after the fact that the medical procedure was "cosmetic," and therefore not eligible for IDR under the NSA.

56. Defendant knew that this representation was false, as it was made solely for the purpose of disregarding a binding award made by an IDR entity and was completely contradictory to the prior representation that the medical procedure was medically necessary, covered, and subject to the Act.

57. Plaintiff relied on the initial representation that the medical procedure was medically necessary, and thereby eligible for IDR under the NSA.

58. Due to Defendant's intentional misrepresentation after the award was granted, Plaintiff has been damaged in the amount of the award, and damaged after the fact for its inability to collect on the award.

## COUNT FIVE

## UNJUST ENRICHMENT

59. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 58 of the First Amended Complaint as though fully set forth herein.

60. On February 28, 2024, Federal Hearings and Appeals Services, Inc. issued an IDR award in Plaintiff's favor, awarding Plaintiff a total of $112,500.00 for the medical services rendered.

61. By failing to reimburse Plaintiff for the services rendered to Defendant's beneficiaries in accordance with the IDR award under the NSA, Defendant has inadequately compensated Plaintiff for services rendered to Defendant's beneficiaries.

62. As a result, Defendant has been unjustly enriched at the expense of Plaintiff.

63. Such unjust enrichment includes, but is not limited to, the retention of funds in Defendant's accounts that should have been remitted to Plaintiff in exchange for medical services performed by Plaintiff on Defendant's beneficiaries.

64. It is against equity and good conscience to permit Defendant to retain monies that it owes to Plaintiff on behalf of its beneficiaries.

65. Therefore, Plaintiff is entitled to restitution of any such payment retained by Defendant that should have been paid to Plaintiff.

## COUNT SIX

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

66. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 65 of the First Amended Complaint as though fully set forth herein.

67. Defendant disregarded a binding IDR award under the NSA, and intentionally re-processed the claim that the medical procedure in question was "cosmetic" rather than "medically necessary" for the sole purpose of avoiding the payment of a legitimate IDR award.

68. Defendant's actions represent bad faith as the sole purpose of re-processing the claim *after the award was granted* was to avoid its responsibility to pay the Plaintiff under the federal NSA.

69. Therefore, Defendant has breached the implied covenant of good faith and fair dealing.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. For an Order confirming the arbitration award, DISP-884612, dated February 28, 2024.

B. For an Order directing Defendant to pay Plaintiff $112,206.08.

C. For attorney's fees, interest, and costs of suit; and

D. For such other and further relief as the Court may deem just and equitable.

Dated: Fair Lawn, New Jersey
October 15, 2024

GOTTLIEB AND GREENSPAN, LLC
*Attorneys for Plaintiff*

By:   /s/ Joseph G. Devine, Jr.
Joseph G. Devine, Jr.
17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
(201) 644-0894