## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROWE PLASTIC SURGERY OF NJ LLC, | Case No. 2:24-cv-09533-JKS-MAH |
| Plaintiff, | |
| -against- | Hon. Jamel K. Semper, U.S.D.J. |
| LEADING EDGE ADMINISTRATORS, | **Motion Day: <u>January 6, 2025</u>** |
| Defendant. | ***<u>Document Electronically Filed</u>*** |
| | **<u>Oral Argument Requested</u>** |

## DEFENDANT LEADING EDGE ADMINISTRATORS' MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

**DAVIS+GILBERT LLP**
Danielle C. Zolot (Bar # 15742015)
1675 Broadway
New York, New York 10019
Telephone:    (212) 468-4800
Facsimile:    (212) 468-4888
dzolot@dglaw.com

*Attorneys for Defendant*
*Leading Edge Administrators*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................... 4

LEGAL STANDARDS ......................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

I.     The Court Should Dismiss Plaintiff's Claim for Relief Under the FAA .............................. 7

     A.     The Court Lacks Subject Matter Jurisdiction to Confirm an IDR Award .................. 7

     B.     Plaintiff Fails to State a Claim for Relief Under the FAA .......................................... 9

II.    The Court Should Dismiss Plaintiff's Claims for Relief Under the NSA ............................ 10

     A.     There Is No Private Right of Action Under the NSA ................................................. 10

     B.     Plaintiff Otherwise Fails to Plead its NSA Claims ................................................... 13

III.   Rowe Fails to State a Claim for Fraudulent Misrepresentation ............................................ 13

IV.   Rowe Fails to State a Claim for Unjust Enrichment ........................................................... 15

V.    Rowe Fails to State a Claim for Breach of the Implied Covenant of Good Faith and
     Fair Dealing .......................................................................................................................... 17

CONCLUSION ....................................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.W. v. Jersey City Pub. Sch.*,
    486 F.3d 791 (3d Cir. 2007) ................................................................................... 11

*Abira Med. Labs., LLC v. BPA Bestlife Ben. Plan Adm'rs & their Affiliate*,
    Civil Action No. 24-00898 (GC) (RLS), 2024 U.S. Dist. LEXIS 197015 (D.N.J.
    Oct. 30, 2024) ........................................................................................................ 18

*Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*,
    No. 17-cv-08697 (FLW) (LHG), 2018 U.S. Dist. LEXIS 96814 (D.N.J. June 7,
    2018)......................................................................................................................... 6

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) .............................................................................................. 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 6

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*,
    No. 11-2775 (JBS/JS), 2012 U.S. Dist. LEXIS 30466 (D.N.J. Mar. 6, 2012) ....... 15

*Demuth v. Navient Sols., LLC*,
    Civil Action No. 17-675, 2017 U.S. Dist. LEXIS 129461 (W.D. Pa. Aug. 15,
    2017)............................................................................................................ 9, 10, 13

*Diagnostic Affiliates of Ne. Hou v. Aetna, Inc.*,
    No. 2:22-CV-00127, 2023 U.S. Dist. LEXIS 21817 (S.D. Tex. Feb. 1, 2023)........ 11

*Faison v. Wells Fargo Bank N.A.*,
    Civil Action No. 18-11755, 2020 U.S. Dist. LEXIS 239508 (D.N.J. Dec. 21,
    2020)......................................................................................................................... 7

*FHMC LLC v. Blue Cross & Blue Shield of Ariz. Inc.*,
    No. CV-23-00876-PHX-GMS, 2024 U.S. Dist. LEXIS 62018 (D. Ariz. Apr. 3,
    2024)................................................................................................................ 10, 12

*Fuzy v. Westfield Bd. of Educ.*,
    Civil Action No. 19-18434, 2022 U.S. Dist. LEXIS 78108 (D.N.J. Apr. 29, 2022) ............... 5

*Genesis Lab. Mgmt. LLC v. United Health Grp., Inc.*,
    No. 21cv12057 (EP) (JSA), 2023 U.S. Dist. LEXIS 38156 (D.N.J. Mar. 6, 2023)............... 11

*Goldenberg v. Indel, Inc.*,
   741 F. Supp. 2d 618 (D.N.J. 2010) ......................................................... 4

*GPS of N.J. M.D. P.C. v. Horizon Blue Cross & Blue Shield*,
   Civ. No. 22-6614, 2023 U.S. Dist. LEXIS 159460 (D.N.J. Sept. 8, 2023)........................... 7, 8

*Grygorcewicz v. Schweitzer-Mauduit Int'l, Inc.*,
   No. 08-cv-4370(FLW), 2009 U.S. Dist. LEXIS 6756 (D.N.J. Jan. 30, 2009) ....................... 17

*GS Labs, Inc. v. Medica Ins. Co.*,
   No. 21-cv-2400, 2022 U.S. Dist. LEXIS 169307 (D. Minn. Sept. 20, 2022) ........................ 11

*Guardian Flight LLC v. Health Care Serv. Corp.*,
   No. 3:23-CV-1861-B, 2024 U.S. Dist. LEXIS 95973 (N.D. Tex.
   May 30, 2024) ..................................................................... 8, 10, 11, 12

*Haghighi v. Horizon Blue Cross Blue Shield of N.J.*,
   No. 19-20483 (FLW), 2020 U.S. Dist. LEXIS 157246 (D.N.J. Aug. 31, 2020).............. 15, 16

*Hall v. Revolt Media & TV, LLC*,
   Civil Action No. 17-2217 (JMV) (MF), 2018 U.S. Dist. LEXIS 108742 (D.N.J.
   June 28, 2018) ......................................................................... 17

*Kadziela v. Multitrust, Inc.*,
   No. 06-5270 (GEB), 2007 U.S. Dist. LEXIS 32991 (D.N.J. May 3, 2007)................. 9, 10, 13

*McCracken v. Murphy*,
   129 F. App'x 701 (3d Cir. 2005)................................................................ 6

*Med-Trans Corp. v. Cap. Health Plan, Inc.*,
   700 F. Supp. 3d 1076 (M.D. Fla. 2023) ........................................................ 8

*Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*,
   No. 3:20cv1675(JBA), 2022 U.S. Dist. LEXIS 43351 (D. Conn. Mar. 11, 2022) ................ 11

*OTG N.Y. Inc. v. Garland*,
   Civil Action No. 23-23344, 2024 U.S. Dist. LEXIS 212887 (D.N.J. Nov. 22,
   2024) (Semper, J.) ......................................................................... 6

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)................................................................ 7

*Potter v. Newkirk*,
   No. 17-08478, 2020 U.S. Dist. LEXIS 194033 (D.N.J. Oct. 17, 2020).................................... 5

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
   71 F. Supp. 3d 492 (D.N.J. 2014) ......................................................... 14

*Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*,
   705 F. Supp. 3d 194 (S.D.N.Y. 2023) .................................................................. 16

*Rowe Plastic Surgery of N.J., L.L.C. v. United Healthcare*,
   No. 23-CV-4352 (AMD) (JAM), 2024 U.S. Dist. LEXIS 174896 (E.D.N.Y. Sep.
   26, 2024).............................................................................................................. 16

*Saloojas, Inc. v. Aetna Health of Cal., Inc.*,
   No. 22-cv-01696-JSC, 2022 U.S. Dist. LEXIS 111620 (N.D. Cal. June 23, 2022) .............. 11

*Small v. Oxford Health Ins., Inc.*,
   Civil Action No. 18-13120 (JLL), 2019 U.S. Dist. LEXIS 27878 (D.N.J. Feb. 21,
   2019)..................................................................................................................... 16

*Teamsters Local 177 v. United Parcel Serv.*,
   966 F.3d 245 (3d Cir. 2020) ................................................................................... 9

*Torsiello v. Strobeck*,
   955 F. Supp. 2d 300 (D.N.J. 2013) ................................................................. 13, 14

*Union Switch & Signal Div. Am. Standard, Inc. v. United Elec., Radio & Mach.
   Workers, Local 610*, 900 F.2d 608 (3d Cir. 1990) ................................................ 9

*Verizon Pa. LLC v. Communs. Workers of Am., Local 1300*,
   216 F. Supp. 3d 530 (E.D. Pa. Oct. 20, 2016)........................................................ 9

*Wade v. Kessler Inst.*,
   798 A.2d 1251 (N.J. 2002) ................................................................................... 18

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 9, 10.............................................................*passim*

No Suprises Act, 42 USC §§ 300gg-111, 112, 131-132 ........................................*passim*

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 ..................... 11

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................ 7

Fed. R. Civ. P. 9(b)................................................................................................... 14

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 1, 6, 18

Fed. R. Civ. P. 12(b)(6) ......................................................................................*passim*

Defendant Omni Administrators Inc. d/b/a Leading Edge Administrators ("Leading Edge"), respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint (the "Complaint" or "Compl.") filed on behalf of Plaintiff Rowe Plastic Surgery of NJ LLC ("Plaintiff" or "Rowe"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Rowe, a plastic surgery medical practice, brings this action against Defendant Leading Edge, a third-party administrator of employer-provided health insurance plans, to recover payments Rowe believes are owed for non-emergency surgery it provided to a beneficiary of a health plan administered by Leading Edge.  In its hodgepodge pleading, Plaintiff makes several different attempts to recover these payments, throwing multiple purported federal and common law claims against the wall to see what sticks.  None do.

All of Plaintiff's claims stem from proceedings undertaken pursuant to the federal No Surprises Act, 42 U.S.C. § 300gg-111 (the "NSA").  The NSA was enacted to limit "surprise billing" – the amount an insured would pay for emergency and, as is relevant here, certain non-emergency services provided by an out-of-network provider at an in-network facility.  *See* 42 U.S.C. §§ 300gg-111, 300gg-131-132.  The NSA created a procedure for providers and insurers to negotiate the amount paid to an out-of-network provider for covered services, and an independent dispute resolution ("IDR") process if the parties cannot resolve the dispute.  *Id.* at § 300gg-111 *et seq.*  During the arbitration process, the provider and insurer each submit an offered payment amount and the IDR entity (the "IDRE") reviewing the dispute selects between the two amounts.  *See id.* at §§ 300gg-111(c)(5)(A)-(B), (c)(6).

Rowe initiated an IDR arbitration with Leading Edge pursuant to these provisions of the NSA. Rowe, an out-of-network provider, performed a breast surgery procedure on the patient at an in-network hospital. Leading Edge originally processed the claim and allowed payment of $293.92, which applied to the patient's deductible. Dissatisfied with this result, Rowe disputed the amount, initiated the negotiation period and, subsequently, an IDR proceeding under the NSA. When Leading Edge inadvertently failed to respond to the proceeding, the IDRE awarded Rowe the full payment amount it proposed – $112,500 (the "Initial Award"). Upon further review of the claim, however, Leading Edge determined that the breast surgery procedure was cosmetic, not medically-necessary, and thus not covered by the patient's health benefit plan, and therefore reprocessed the claim accordingly.

As a result of the foregoing, Plaintiff purports to assert claims (1) asking this court to confirm the Initial Award under the Federal Arbitration Act (the "FAA"); (2) for violating the NSA by failing to pay the Initial Award; (3) for violating the NSA by reprocessing the underlying insurance claim; (4) for fraudulent misrepresentation based on the reprocessed claim; (5) unjust enrichment; and (6) breach of the implied covenant of good faith and fair dealing. None of these claims is actionable before this Court.

*First*, the Court lacks subject matter jurisdiction to confirm the Initial Award under Section 9 of the FAA because that provision does not apply to the NSA, which does not incorporate or adopt the procedures of the FAA except to limit the grounds for *vacating* awards under Section 10, not confirming them. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (citing 9 U.S.C. § 10(a)). Even if it did, the Initial Award is not a final, binding award capable of being confirmed because it was subsequently rescinded by the IDRE, a decision that is now subject to appeal. This Court is not the proper forum to review a nullified IDR award.

*Second*, Plaintiff cannot state either of its claims under the NSA because the statute does not provide litigants with a private right of action to enforce it against Leading Edge. Even if it did, any claim to enforce the Initial Award is premature given the ongoing proceedings before the IDRE. Moreover, the Complaint fails to identify any provision of the NSA that Leading Edge purportedly violated by reprocessing the claim. At best, Count Three is merely duplicative of Count Two which alleges a violation of the NSA's payment provision.

*Third*, Plaintiff fails to plead a fraudulent misrepresentation claim because it offers no allegations that it relied on any false statement or that it was damaged in reliance thereon. Rather, Rowe asserts that it relied on Leading Edge's initial processing of the medical claim as medically-necessary – a statement Rowe alleges was *true*. Rowe alleges that Leading Edge's later reprocessing of the claim as cosmetic was false, but does not allege that it relied on that representation in any way. Nor does Plaintiff allege that Leading Edge intended for Rowe to rely on its supposed misrepresentation, as is required to state a fraudulent misrepresentation claim.

*Fourth*, Plaintiff's unjust enrichment claim fails because Plaintiff does not allege that it conferred any benefit on Leading Edge. Conferral of a benefit *on the defendant* is the *sine qua non* of any such claim. Rather, Rowe alleges it conferred a benefit on a beneficiary of a health plan administered by Leading Edge. Courts routinely dismiss unjust enrichment claims against insurers premised on benefits provided to beneficiaries or plan participants.

*Fifth*, Plaintiff's breach of the implied covenant of good faith and fair dealing claim fails because Plaintiff has not plausibly alleged any contract between the parties. Plaintiff's conclusory allegation that Leading Edge's actions "represent bad faith" are insufficient to state a claim.

For all of the foregoing reasons and those discussed below, the Court should dismiss Rowe's Complaint in its entirety with prejudice.

## <u>RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]</u>

Rowe "is a medical practice that specializes in plastic surgery." (Compl. ¶ 5.)  Leading Edge is a health benefits administrator.  (*Id.* ¶ 2.)  Rowe alleges that on August 16, 2023, a surgeon employed by Rowe performed a "breast reduction procedure" on a patient who "was the beneficiary of a health plan issued or administered by Defendant." (*Id.* ¶¶ 6-7, 13.)  Rowe alleges it is an "out-of-network provider" under the patient's health benefits plan which means Rowe "does not have a network contract with Defendant that would determine or limit payment for Plaintiff's services to Defendant's beneficiaries." (*Id.* ¶ 8.)  Rowe alleges, however, that "since the services were rendered at an in-network facility, the payment process for Plaintiff's services is governed by the Federal No Surprises Act." (*Id.* ¶ 9.)

Rowe alleges that it issued a medical bill for $150,000 "seeking payments from Defendant for the medical services rendered" to the patient.  (*Id.* ¶¶ 12-13 & Compl. Ex. A.)  On October 23, 2023, Leading Edge processed the claim and "'allowed' payment of $293.92." (*Id.* ¶ 15 & Compl. Ex. B.)  Pursuant to the NSA, Rowe disputed Leading Edge's determination.  (*Id.* ¶ 18.)  The parties did not resolve the dispute during the negotiation period provided for under the NSA so Plaintiff initiated an IDR proceeding.  (*Id.* ¶¶ 18-20.)  Rowe submitted an offer of $112,500.00 to the IDRE as "the appropriate out-of-network rate" for this item or service.  (Compl. Ex. C (Dkt. 3-1).)  Leading Edge inadvertently did not submit a counter-offer.  (*See id.*)  On February 28, 2024, the IDRE reviewing the dispute, which is empowered solely to choose between the two sides' offers, awarded Plaintiff $112,500.00, selecting Plaintiff's proposal since it was the only one presented.  (*Id.* ¶ 21 & Compl. Ex. C.)  Rowe asserts that "the additional payment was due on

---

[1] Unless otherwise stated, all facts recited herein are based on the allegations of the Complaint, and are assumed true for purposes of this motion only unless they are contradicted by documentary evidence. *See Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010).

March 29, 2024" yet "Defendant failed to issue the additional payment." (*Id.* ¶ 23.) The Initial Award invites the parties to contact the IDRE with any questions. (Compl. Ex. C.)

Upon further review, Leading Edge later determined that the services performed on the patient were a "non-covered benefit" as the services constituted "cosmetic breast surgery" and therefore denied the claim and "amended the Patient's responsibility from an initial amount of $293.92 to . . . $150,000.00." (Compl. ¶¶ 28-29, 31.) As a result of its determination that the procedure was "cosmetic" and therefore a non-covered benefit, Leading Edge objected to the Initial Award on the grounds that the claim was not eligible for determination under the IDR process. (*See* Zolot Ex. A.)[2] On December 4, 2024, the IDRE notified the parties that the dispute had been closed due to ineligibility (the "Closure Notice").[3] (*Id.*) The Closure Notice states that Leading Edge "made the following objection: [s]ervice [was] denied on reprocessed claim" and that this objection "states a valid reason for the ineligibility and subsequent closure of DISP-884612." (*Id.*) The Closure Notice also allows the party to appeal the decision, stating: "If you believe that the case has been incorrectly determined ineligible, please provide a statement, as well as the required information, as to how the case is, in fact, eligible." (*Id.*)

---

[2] Citations to "Zolot Ex. A" refer to the exhibit annexed to the Declaration of Danielle C. Zolot, Esq., dated December 12, 2024, submitted herewith.

[3] While a court generally may not consider documents outside the pleadings on a 12(b)(6) motion, the Court may consider, among other things, "[d]ocuments which are integral to the complaint." *Potter v. Newkirk*, No. 17-08478 (RBK/KMW), 2020 U.S. Dist. LEXIS 194033, at *10-11 (D.N.J. Oct. 17, 2020) (citations omitted). "Integral documents are defined as documents which create rights or duties that are the basis for the Complaint. Put differently, this exception encompasses situations where the plaintiff's claim depends on the contents of a document." *Id.* (internal citations omitted). In *Potter*, the court found certain documents integral to the complaint and stated that "the failure to consider such documents would allow plaintiffs to play fast and loose with the court by failing to attach documents which show that their claims are legally deficient." *Id.* at *17-18. An arbitration award in its entirety is integral to the complaint where the claims concern the merits of an underlying arbitration and where defendants contend that the arbitration record precludes the claims "[b]ecause [the arbitration award] is directly relevant to the facial viability of Plaintiffs' claims." *See Fuzy v. Westfield Bd. of Educ.*, Civil Action No. 19-18434, 2022 U.S. Dist. LEXIS 78108, at *3-4 (D.N.J. Apr. 29, 2022). Therefore, the Closure Notice is integral to the Complaint and the Court may consider it when analyzing the sufficiently of the Complaint under 12(b)(6). *See id.*

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint or portions of a complaint may be dismissed for a lack of subject matter jurisdiction. *OTG N.Y. Inc. v. Garland*, Civil Action No. 23-23344, 2024 U.S. Dist. LEXIS 212887, at *4 (D.N.J. Nov. 22, 2024) (Semper, J.). "[I]t is the plaintiff who bears the burden of proving that the federal court has jurisdiction." *McCracken v. Murphy*, 129 F. App'x 701, 702 (3d Cir. 2005). "In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief." *OTG N.Y. Inc.*, 2024 U.S. Dist. LEXIS 212887, at *4 (citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), courts must assess whether the "complaint . . . contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]ourts within the Third Circuit engage in a three-step progression" to determine whether a complaint meets the *Twombly/Iqbal* standard. *Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*, No. 17-cv-08697 (FLW) (LHG), 2018 U.S. Dist. LEXIS 96814, at *6 (D.N.J. June 7, 2018) (citations omitted). "First, the reviewing court 'outline[s] the elements a plaintiff must plead to state a claim for relief.'. . . Next, the court 'peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth.' . . . Finally, where 'there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id* at *6-7*. (internal citations omitted). To that end, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation,"

*Twombly*, 550 U.S. at 555 (quotations and citation omitted).  Moreover, a complaint must at the very least contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Further, it is well-settled in the Third Circuit that dismissal under Rule 12(b)(6) should be with prejudice where amendment would be futile or inequitable.  *See id.* at 236.  Amendment would be futile if it "would fail to state a claim upon which relief could be granted." *Faison v. Wells Fargo Bank N.A.*, Civil Action No. 18-11755, 2020 U.S. Dist. LEXIS 239508, at *11 (D.N.J. Dec. 21, 2020) (citations omitted).

## ARGUMENT

### I.    The Court Should Dismiss Plaintiff's Claim for Relief Under the FAA

#### A.  The Court Lacks Subject Matter Jurisdiction to Confirm an IDR Award

Count One of the Complaint seeks confirmation of the Initial Award under Section 9 of the FAA, 9 U.S.C. § 9.  (Compl. ¶ 41.)  This claim fails because the authority granted by the FAA for parties to seek a court's confirmation of an arbitration award do not apply to IDR awards under the NSA, and therefore the Court lacks subject matter jurisdiction to confirm the Initial Award.

As Plaintiff acknowledges, Section 9 of the FAA provides that a court must grant an order to confirm an arbitration award "if the parties *in their agreement* have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9 (emphasis added).  Plaintiff concedes that "the parties do not have an agreement that a judgment of the court shall be entered upon the arbitration award at issue." (Compl. ¶ 38.)  Instead, Plaintiff argues that this Court has authority to confirm the Initial Award which was issued pursuant to the NSA because "this District has held that Federal courts have authority to confirm arbitration awards issued pursuant to the NSA under 9 U.S.C. § 9." (*Id.* ¶ 39.)  In support of its argument, Plaintiff

solely relies on *GPS of N.J. M.D. P.C. v. Horizon Blue Cross & Blue Shield*, Civ. No. 22-6614, 2023 U.S. Dist. LEXIS 159460 (D.N.J. Sept. 8, 2023).  In *GPS*, however, the parties and the Court merely *assumed* that the FAA's confirmation provision applied to IDR awards without engaging in any analysis of whether those particular provisions applied to the NSA.  Instead, they focused their analysis on two specific grounds for *vacatur* under 9 U.S.C. § 10.  The court confirmed the award because plaintiff had not met its burden of proving that the award at issue should be vacated. *Id.* at *24.  As other courts have observed, under the circumstances, the *GPS* Court "simply had no need to grapple with the broader applicability of the FAA to the NSA."  *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1076 (M.D. Fla. 2023).

Indeed, courts that have considered the issue have found that the authority to confirm arbitration awards conferred by Section 9 of the FAA does *not* apply to the NSA.  They observed that "the NSA does not invoke or discuss §§ 6, 9, 12, or any other sections of the FAA" and incorporates by reference only the FAA provisions regarding *vacatur* of an award.  *Id.* at 1083-84. The NSA "notably did not incorporate the FAA provision that enables parties to confirm arbitration awards." *Guardian Flight LLC v. Health Care Serv. Corp.*, No. 3:23-CV-1861-B, 2024 U.S. Dist. LEXIS 95973, at *6 (N.D. Tex. May 30, 2024).  For that reason, the court in *Med-Trans Corp.* found that it lacked subject matter jurisdiction over the plaintiffs' efforts to enforce an IDR awards and the *Guardian* court stated that the NSA does not give courts the authority to confirm IDR awards.

Here, Plaintiff has not sought to vacate the Initial Award, but to confirm it under Section 9 of the FAA.  Because Section 9 was not incorporated into and does not apply to the NSA, the Court lacks subject matter jurisdiction over Count One of the Complaint and should dismiss the claim with prejudice.

### B.  Plaintiff Fails to State a Claim for Relief Under the FAA

Even assuming *arguendo* that federal courts have authority to confirm IDR awards under the FAA, Plaintiff nonetheless cannot state a claim for relief because the Initial Award it seeks to confirm is not final or binding.

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Teamsters Local 177 v. United Parcel Serv.*, 966 F.3d 245, 252 (3d Cir. 2020).  The United States Court of Appeals for the Third Circuit follows the "complete arbitration rule," pursuant to which "a district court should not entertain such a lawsuit [seeking to confirm] [an] arbitration award until the arbitration is complete and the award is final." *Verizon Pa. LLC v. Communs. Workers of Am., Local 1300*, 216 F. Supp. 3d 530, 533 (E.D. Pa. Oct. 20, 2016) (citing *Union Switch & Signal Div. Am. Standard, Inc. v. United Elec., Radio & Mach. Workers, Local 610*, 900 F.2d 608, 610 (3d Cir. 1990)).  If the parties "[have] not gone through the entire arbitration process," the Court should deny a motion to confirm an award. *See Kadziela v. Multitrust, Inc.*, No. 06-5270 (GEB), 2007 U.S. Dist. LEXIS 32991, at *7 (D.N.J. May 3, 2007).  Relatedly, a court should not confirm an arbitration award that is the subject of an appeal.  *Demuth v. Navient Sols., LLC*, Civil Action No. 17-675, 2017 U.S. Dist. LEXIS 129461, at *5-6 (W.D. Pa. Aug. 15, 2017).

Here, the Initial Award is not a final award capable of confirmation because it has in fact been vacated.  On December 4, 2024, the IDRE notified the parties that upon review of Leading Edge's objection it found the dispute ineligible for adjudication and was closing the IDR dispute, thus vacating the Initial Award.  (Zolot Ex. A.)  As a result, the Initial Award is not a final or binding decision capable of confirmation because it is instead essentially a nullity.

While Plaintiff may dispute the IDRE's determination, it cannot dispute that it retains the ability to challenge that decision, further illustrating the unfinished nature of the IDR process.  The

Closure Notice provides Plaintiff the opportunity to appeal the determination "[i]f [it] believe[s] that the case has been incorrectly determined ineligible," (*id.*), and Rowe has chosen to take advantage of that offer. As a result, the IDR process remains ongoing due to Rowe's appeal of the IDRE's December 4 determination. For that reason, Count One of the Complaint is premature and the Court should dismiss it for failure to state a claim. *See, e.g.*, *Kadziela*, 2007 U.S. Dist. LEXIS 32991, at *7 (finding motion to confirm award premature where arbitration process was ongoing); *Demuth*, 2017 U.S. Dist. LEXIS 129461, at *5-6 (dismissing claim to confirm arbitration award and finding action premature where defendant appealed arbitration award before AAA and collecting cases).

## II.    The Court Should Dismiss Plaintiff's Claims for Relief Under the NSA

### A.    There Is No Private Right of Action Under the NSA

Plaintiff's claims under the No Surprises Act fail because the statute does not provide a private right of action. Counts Two and Three of the Complaint purport to assert claims against Leading Edge for allegedly violating the NSA by failing to pay the Initial Award (Count Two) and reprocessing the underlying insurance claim to "escap[e] its obligation under the NSA" (Count Three). (Compl. ¶¶ 47-48, 51.) Indeed, these alleged acts form a central basis for the entirety of Plaintiff's Complaint, with Plaintiff citing Leading Edge's purported obligations under the NSA throughout. (*See, e.g.*, *id.* ¶¶ 9-11, 22-24, 38, 43-48, 50-53, 55, 60-61, 67.) The NSA, however, does not provide for any private right of action for Plaintiff to sue Leading Edge in federal court to enforce any aspect of its purported obligations under the NSA. Although courts in this District have not yet considered the issue, several other courts recently found that the NSA does not provide an express or implied cause of action to enforce IDR awards. *See Guardian Flight LLC*, 2024 U.S. Dist. LEXIS 95973, at *11; *FHMC LLC v. Blue Cross & Blue Shield of Ariz. Inc.*, No. CV-23-00876-PHX-GMS, 2024 U.S. Dist. LEXIS 62018, at *9 (D. Ariz. Apr. 3, 2024).

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). An express private right of action is apparent on the face of the statute. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 805 (3d Cir. 2007). "To determine if Congress intended to imply a private right of action, courts consider the text and structure of the statute to 'determine whether it displays an intent to create not just a private right but also a private remedy.'" *See Genesis Lab. Mgmt. LLC v. United Health Grp., Inc.*, No. 21cv12057 (EP) (JSA), 2023 U.S. Dist. LEXIS 38156, at *8 (D.N.J. Mar. 6, 2023) (citing *Sandoval*, at 288 n.7).

Clearly, the NSA does not create an *express* private right of action for providers to sue administrators to enforce IDR awards or for alleged damages resulting from the reprocessing of medical claims underlying an IDR arbitration, as no such private right of action appears in the statute. *See Guardian Flight LLC*, 2024 U.S. Dist. LEXIS 95973, at *7. Plaintiff asserts that according to the NSA, Leading Edge had 30 days from the date of the Initial Award to remit payment to Plaintiff. (Compl. ¶¶ 22, 46.) But the "Timing of payment" provision of the NSA only imposes a time limit for payment under the statute; it does not confer on medical providers a private cause of action to enforce the statute against health plan administrators. *See* 42 U.S.C. § 300gg-112(b)(6).[4] Similarly, there is no provision in the NSA concerning the reprocessing of claims that would provide Plaintiff a cause of action to seek relief against a health plan administrator. *See generally, id.* at § 300gg-112.

---

[4] The "Timing of payment" provision in the NSA is similar to the payment provision in the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136, which requires that insurers "shall reimburse the provider" at the cash price for such testing services. Yet, nearly every court that has reviewed CARES Act claims, including in this District, has found that the CARES Act does not provide a private right of action for health care providers. *See, e.g.*, *Genesis*, 2023 U.S. Dist. LEXIS 38156, at *10 & n.4; *Diagnostic Affiliates of Ne. Hou v. Aetna, Inc.*, No. 2:22-CV-00127, 2023 U.S. Dist. LEXIS 21817 (S.D. Tex. Feb. 1, 2023); *GS Labs, Inc. v. Medica Ins. Co.*, No. 21-cv-2400 (SRN/TNL), 2022 U.S. Dist. LEXIS 169307 (D. Minn. Sept. 20, 2022); *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, No. 22-cv-01696-JSC, 2022 U.S. Dist. LEXIS 111620 (N.D. Cal. June 23, 2022); *Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20cv1675(JBA), 2022 U.S. Dist. LEXIS 43351 (D. Conn. Mar. 11, 2022). This Court should rule similarly.

To state a claim, Plaintiff must therefore show that Congress nevertheless intended to *imply* a private remedy.  Plaintiff cannot do so.  *See Genesis*, 2023 U.S. Dist. LEXIS 38156, at *8.  The courts who have considered this issue have found no *implied* private right of action under the NSA as "[t]here is no language in the NSA establishing that Congress intended to create a remedy for out-of-network providers."  *See Guardian Flight LLC*, 2024 U.S. Dist. LEXIS 95973, at *7.  "In fact, the NSA includes language that almost entirely prohibits judicial review of IDR decisions." *Id.* at *9.  In *Guardian Flight LLC*, the court rejected plaintiffs' NSA claim seeking to enforce IDR awards, concluding that "the NSA does not create a procedural mechanism for Plaintiffs to enforce their IDR awards in federal court."  *Id.*  The *Guardian* court noted that "the NSA does not contain any fee-shifting provisions or any other language suggesting that Congress intended to confer a private cause of action to healthcare providers" and found that the NSA's language stating that IDR decisions "'shall not be subject to judicial review' other than permitting courts to vacate IDR decisions under the same four grounds a court can vacate an arbitration award under the FAA" "strongly suggests that Congress did not intend to confer Plaintiffs a cause of action to enforce IDR awards." *Id.* at *8-9 (citing 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II)).  Similarly, in *FHMC LLC v. Blue Cross & Blue Shield of Ariz. Inc.*, the court observed about the NSA:  "An implied right of action is incongruous with such a detailed statutory scheme, in which judicial review is limited to specific instances" and in which providers have the option to "(1) initiate IDR for all their unpaid or underpaid claims, 42 U.S.C. § 300gg-111(c)(1)(B), (2) notify the Centers for Medicare & Medicaid Services ("CMS") about issues with the IDR process, and (3) "report[] [the insurer] to CMS for their violations of the NSA," including [the insurer's] alleged failure to comply with the adjudicatory time limits specified in the statute."  2024 U.S. Dist. LEXIS 62018, at *9.

Because the NSA does not provide a private right of action, the Court should dismiss Counts Two and Three of the Complaint with prejudice. *See, e.g.*, *id.* at \*8-9 (dismissing NSA claim to recover allegedly underpaid amounts).

### B. Plaintiff Otherwise Fails to Plead its NSA Claims

Even if the NSA did provide a private right of action, Plaintiff's claims would still fail.

Count Two is premised on Leading Edge's alleged failure to pay amounts due under the Initial Award. But as discussed above, the Initial Award has since been vacated by the IDRE. As a result, Plaintiff cannot state a claim based on the Initial Award. (*See supra*, Section I.B (citing *Kadziela*, and *Demuth*).)

Count Three fails to state a claim because the Complaint fails to plead the violation of any particular provision of or obligation under the NSA. Plaintiff makes the conclusory allegation that Leading Edge violated the NSA by reprocessing the medical claim to "escape its obligation under the NSA." (Compl. ¶¶ 51-53.) But even if that were true (which it is not), nowhere in the Complaint does Plaintiff cite any provision of the NSA prohibiting the reprocessing of a claim. At best, Count Three can be construed as alleging a violation of the NSA's payment obligations as it asserts Leading Edge reprocessed the claim "[r]ather than pay the binding award as obligated under the NSA." (*Id.* ¶ 51.) In this regard, however, the claim is merely duplicative of Count Two and should be dismissed on that basis. For these additional reasons, the Court should dismiss Counts Two and Three of the Complaint.

### III. Rowe Fails to State a Claim for Fraudulent Misrepresentation

The Court should dismiss Plaintiff's fraudulent misrepresentation claim because the Complaint fails to allege that Plaintiff relied on any false representation or was damaged as a result. To state a claim for fraudulent misrepresentation under New Jersey law, a plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by

the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 316 (D.N.J. 2013) (citation omitted). Fraud claims must be pleaded according to the heightened standard of Rule 9(b). *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 503-04 (D.N.J. 2014). Where the plaintiff does not "identify a misrepresentation, allege that the speaker knew it was false, or state that the speaker intended [plaintiff] to rely on the misrepresentation" and merely offers conclusory allegations as to reasonable reliance and damages, the court should dismiss the claim. *See Torsiello*, 955 F. Supp. 2d at 316.

The entire premise of Rowe's fraudulent misrepresentation claim is nonsensical and, ultimately, fatally flawed. The Complaint alleges that Leading Edge made the following two representations: *first*, Leading Edge "initial[ly] process[ed] . . . the instant claim" and "stated that the Patient's Responsibility totaled only $293.93" (Compl. ¶ 17); and *second*, Leading Edge later "reprocessed the claim, generating a revised EOB, which indicated that the claim was a 'non-covered benefit'" and "denied the claim in full," stating that the "Patient's Responsibility now totaled $150,000.00." (*Id.* ¶¶ 29-30 (emphasis removed).) Rowe alleges that only the *second* representation was false. Specifically, Rowe alleges that Leading Edge "misrepresented . . . that the medical procedure was 'cosmetic,' and therefore not eligible for IDR under the NSA." (*Id.* ¶ 55.) Rowe, however, does not allege that it relied on the second representation, as would be required to plead an actionable claim. Instead, the Complaint alleges the opposite, asserting that Plaintiff "relied on the *initial representation* that the medical procedure was medically necessary." (*Id.* ¶ 57 (emphasis added).) Rowe then concludes, without any factual support, that "Plaintiff has been damaged in the amount of the award, and damaged after the fact for its inability to collect on the award" based on the initial representation which Rowe contends was truthful. (*Id.* ¶ 58.) In

other words, Plaintiff alleges that it relied on the purportedly *true* statement by Leading Edge, and *not* the subsequent allegedly *false* statement.

Because the Complaint fails to plead reliance on any alleged misrepresentation, it also fails to plead conduct undertaken in reliance on that statement and resulting damages. At best, Plaintiff alleges that it "was damaged" by its failure to collect the award, again indicating its reliance on the purportedly true initial statement, not any actionable misstatement. The Court need not accept as true this conclusory assertion. In any event, the Complaint is devoid of any allegations that Leading Edge intended Rowe to rely on the purported misstatement, and fails for that reason alone.

Accordingly, the Court should dismiss Count Four.

## IV.    Rowe Fails to State a Claim for Unjust Enrichment

Plaintiff's unjust enrichment claim fails because the Complaint does not allege that Rowe conferred any benefit on Leading Edge for which it was not compensated. To establish a claim for unjust enrichment, a plaintiff must allege that "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-20483 (FLW), 2020 U.S. Dist. LEXIS 157246, at *13-14 (D.N.J. Aug. 31, 2020) (citations omitted). Critically, "the benefit at issue must have been conferred *on . . . the [d]efendant*." *Id.* (citing *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-2775 (JBS/JS), 2012 U.S. Dist. LEXIS 30466, at *22-23 (D.N.J. Mar. 6, 2012)).

Plaintiff's unjust enrichment claim is fundamentally flawed because it is based on an alleged benefit provided by Rowe to the patient, *not* to Leading Edge. Specifically, Plaintiff alleges that Leading Edge "has inadequately compensated Plaintiff for services rendered ***to Defendant's beneficiaries***" and therefore "[i]t is against equity and good conscience to permit Defendant to retain monies that it owes to Plaintiff ***on behalf of its beneficiaries***." (Compl. ¶¶ 61,

64 (emphasis added).) It is well established in this District, however, that an insurer – and certainly a third-party administrator – does not receive any benefit from medical services performed for an insured for purposes of unjust enrichment claims; "the insured individual, rather than the insurer, derives the benefit." *Haghighi*, 2020 U.S. Dist. LEXIS 157246, at *14 (dismissing unjust enrichment claim against insurer based on services provided to insured); *see also Small v. Oxford Health Ins., Inc.*, Civil Action No. 18-13120 (JLL), 2019 U.S. Dist. LEXIS 27878, at *18 (D.N.J. Feb. 21, 2019) (dismissing quantum meruit claim against insurance provider based on services provided to insured).

Tellingly, several courts have recently dismissed similar unjust enrichment claims levied by Rowe against insurers on precisely this basis. *See, e.g.*, *Rowe Plastic Surgery of N.J., L.L.C. v. United Healthcare*, No. 23-CV-4352 (AMD) (JAM), 2024 U.S. Dist. LEXIS 174896, at *18 (E.D.N.Y. Sep. 26, 2024) (dismissing unjust enrichment claim based on allegation that defendants' "retention of the unpaid amount for the medical services provided[] [to the patient] is improper[] and it is against equity and good conscience to allow [the defendants] to keep the monies" because "there was no benefit to the defendants, the insurers"); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, 705 F. Supp. 3d 194, 204 (S.D.N.Y. 2023) (dismissing unjust enrichment claim where "the only benefit allegedly conferred on defendant is the surgery plaintiffs performed on [the patient] . . . [because] that is not a benefit that inured to defendant").

As a matter of law, Rowe's allegations that it conferred a benefit solely on Leading Edge's beneficiaries are insufficient to state an unjust enrichment claim against Leading Edge. Accordingly, the Court should dismiss Count Five of the Complaint with prejudice.

**V.    Rowe Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff alleges Leading Edge breached the implied covenant of good faith and fair dealing by reprocessing the medical claim as "cosmetic" after the Initial Award was granted to Plaintiff. (Compl. ¶ 66-69.)  However, this claim fails because no covenant of good faith and fair dealing can be implied where no contract between the parties exists.  "The covenant of good faith and fair dealing is implied in every contract in New Jersey; thus, it is axiomatic that a contract must exist between two parties before a court will infer this covenant."  *Grygorcewicz v. Schweitzer-Mauduit Int'l, Inc.*, No. 08-cv-4370(FLW), 2009 U.S. Dist. LEXIS 6756, at *5 (D.N.J. Jan. 30, 2009) (citations omitted).  "Where a plaintiff fails to adequately allege the existence of a contract, plaintiff cannot allege that defendant breached the covenant of good faith and fair dealing."  *Hall v. Revolt Media & TV, LLC*, Civil Action No. 17-2217 (JMV) (MF), 2018 U.S. Dist. LEXIS 108742, at *7 (D.N.J. June 28, 2018).  Moreover, the covenant "requires a party to refrain from 'destroying or injuring the right of the other party to receive *its contractual benefits*.'"  *Id.* (emphasis added).  Thus, in the absence of a contract between the parties, this claim fails as a matter of law.

Here, Rowe does not plead it was party to any contract with Leading Edge.  Indeed, Rowe alleges that "[a]s an out-of-network provider, Plaintiff *does not have a network contract* with Defendant . . . ."  (Compl. ¶ 8 (emphasis added).)  Instead, Rowe's claim rests on the allegation that Leading Edge failed to pay *the Initial Award*.  Rowe alleges, "Defendant disregarded [the Initial Award], and intentionally re-processed the claim . . . for the sole purpose of avoiding the payment of a legitimate IDR award" and concludes "Defendant's actions represent bad faith . . . ."  (*Id.* ¶¶ 67-68.)  Even setting aside that the Initial Award no longer stands, it is clear that an arbitration award entered into without a response from the non-initiating party is not a *contractual*

*benefit* between the parties.  Therefore, Rowe has failed to allege a cognizable contract between the parties and its implied covenant claim cannot stand.  *See, e.g.*, *Abira Med. Labs., LLC v. BPA Bestlife Ben. Plan Adm'rs & their Affiliates*, Civil Action No. 24-00898 (GC) (RLS), 2024 U.S. Dist. LEXIS 197015, at *8 (D.N.J. Oct. 30, 2024) (dismissing implied covenant claim for failure to "adequately plead[] the existence of a contract or its breach" and citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) stating "[t]o the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law").  The Court should therefore dismiss Count Six of the Complaint with prejudice.

## **CONCLUSION**

For all of the foregoing reasons, Leading Edge respectfully requests that the Court dismiss the Complaint in its entirety pursuant to 12(b)(1) and/or 12(b)(6) with prejudice, and grant such further relief as the Court deems just and proper.

Dated: New York, New York
      December 12, 2024

**DAVIS+GILBERT LLP**

By:   */s/ Danielle C. Zolot*
     Danielle C. Zolot (Bar # 15742015)
1675 Broadway
New York, New York  10019
Telephone:  (212) 468-4800
Facsimile:  (212) 468-4888
dzolot@dglaw.com

*Attorneys for Defendant*
*Leading Edge Administrators*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on December 12, 2024, the foregoing Memorandum of Law In Support of Defendant's Motion to Dismiss the Amended Complaint was e-filed with the Clerk of the Court by using the CM/ECF system, which effectuated service upon the following counsel of record:

Joseph Gunnar Devine, Jr.
GOTTLIEB & GREENSPAN, LLC
17-17 Route 208, Suite 250
Fair Lawn, NJ 07410
Jdevine@gottliebandgreenspan.com

*/s/ Danielle C. Zolot*
Danielle C. Zolot

Dated: December 12, 2024